UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| | ) | Bankruptcy Case |
| JEFFREY E. CRUMPTON, | ) | No. 15-30021-KLP |
| | ) | |
| Debtor. | ) | |

### TRUSTEE'S MOTION TO SELL PROPERTY OF THE ESTATE

Bruce H. Matson, Trustee ("Trustee") for the above referenced Debtor (the "Debtor") by counsel, pursuant to section 554(a) of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") moves the Court for authority to sell certain property to Matthew Martin for consideration and, in support thereof, states as follows:

### Background

1. The Debtor filed for relief in the above captioned bankruptcy court (the "Court") pursuant to chapter 7 of the Bankruptcy Code.

2. The Trustee was appointed interim trustee in this case and continues to serve in that capacity.

### Need/Basis for Relief

3. Among the assets of the Debtor's bankruptcy estate is 1/6 interest in real estate known commonly as 1505 Cutshaw Place, Henrico, VA 23226, which real property was inherited by the Debtor (the "Property").

---

Bruce H. Matson (Va. Bar No. 22874)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23218
(804) 783-2003

Trustee

4. Pursuant to 11 U.S.C. § 363(b) the Trustee is authorized to sell property of the estate.

5. The other co-owners of the Property have listed the Property for sale and have obtained an arms-length contract for its sale to Matthew Martin. A copy of Sale Agreement is attached hereto as Exhibit A.

6. Accordingly, the Trustee proposes to join in the sale and sell the Estate's 1/6 interest to Matthew Martin for 1/6 of the proceeds in the contract net of customary closing costs.

7. The Trustee believes that this sale is in the best interest of creditors.

8. The Trustee, therefore, seeks authority to sell the Property to the Matthew Martin as provided herein.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order substantially in the form attached hereto as Exhibit B: (i) approving the sale of the Property to Matthew Martin; and (ii) granting such other and further relief as is just and appropriate under the circumstances.

/s/ Bruce H. Matson
Chapter 7 Trustee

Bruce H. Matson (Va. Bar No. 22874)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23218
(804) 783-2003

Chapter 7 Trustee

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June, 2015, a true and correct copy of this Trustee's Motion to Sell Property of the Estate by first-class mail, postage prepaid or electronic delivery to:

      Robert B. Van Arsdale
      Office of the U.S. Trustee
      701 East Broad Street - Suite 4304
      Richmond, VA 23219
          Assistant U.S. Trustee

      Bruce W. White
      8550 Mayland Drive, Suite 206
      Richmond, VA 23294
          Counsel for Debtor

      John G. Chaplin, Jr.
      Chaplin & Qureshi, PLC
      4900 Dominion Boulevard, Suite A-1
      Glen Allen, VA 23060

          /s/ Bruce H. Matson
          Chapter 7 Trustee

Authentisign ID: 13708B3D-5750-4BD6-A922-AA825BE7FE15
Authentisign ID: 6D8E2050-4B9E-4388-9271-0DC24EB78202A




## Central Virginia Regional MLS
## Purchase Agreement

This is a legally binding document for the purchase of real property. If not understood, seek competent advice before signing.
(Paragraphs marked with an asterisk * require a blank to be filled in or checked.)

*This Purchase Agreement (the "Agreement") is dated __Apr__ __17th__, 20__15__, between __Matthew Martin GC LLC__ __Cynthia A. Newcomb Executor of Estate__ ("Purchaser") and __Estate of Hollis Bickel__ ("Seller"). The parties acknowledge __Hometown Realty__ ("Listing Broker") represents Seller, and __RE/MAX Today__ ("Selling Broker") represents Purchaser.

* 1. **REAL PROPERTY:** Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and appurtenances thereto belonging, located in the City/County of __Henrico__, Virginia. Lot____ Block____ Section____ of __North Willow Lawn__ Subdivision Tax Parcel # __772-736-1366__ Other_____ and more commonly known as: __1505 Cutshaw Pl__ __Henrico__ VA __23226__ together with the items of personal property described in paragraph 2 (the "Property").

*2. **PERSONAL PROPERTY INCLUDED:** Included with the sale of the above real estate (if located within said Property at the time of signing this Agreement, unless otherwise noted) are the shades, plantation shutters, blinds, curtain and drapery rods, screens and screen doors, storm windows and doors, light fixtures, wall to wall carpeting, garbage disposal, built-in range, built-in oven, built-in dishwasher, laundry tubs, attic fan, smoke and heat detectors, awnings, electrical wiring connections for appliances, ceiling fan(s), garage door opener(s) and remotes, mailbox and post, outbuildings and sheds, gas logs, fireplace inserts and all other items attached to the real estate and being a part thereof, including all shrubbery and plantings on the Property. Also included are the following items:
_____
_____

*3. **ADDENDA:** The following addenda are made a part of this Agreement:
☒ Lead-Based Paint Disclosure (required on all pre-1978 homes)  ☐ Right of First Refusal  ☐ Short Sale Addendum
☐ "AS IS" Addendum  ☐ Other_____

*4. **PURCHASE PRICE:** The Purchase Price of the Property is __One Hundred Seventy-Nine Thousand Nine Hundred Fifty__ Dollars ($__179,950.00__), which shall be paid to Seller at settlement, subject to the pro-rations described herein and/or from the following sources [check all applicable box(es)]:

☒ This sale is **not** subject to financing. Purchaser shall pay all cash at closing by bank certified funds or bank wire.

☐ This sale **is** subject to financing. This is subject to Purchaser being able to obtain or assume a [select loan type]:
  ☐ Conventional; ☐ FHA; ☐ VA; ☐ VHDA or ☐ other _____ loan in an amount not less than ____% of the Purchase Price OR $_____ ("Loan Amount"), secured by a first deed of trust lien on the Property bearing interest at a [select one box]:
    ☐ fixed rate not exceeding ____% per year OR
    ☐ at an adjustable rate with an initial rate not to exceed ____% per year and a maximum rate not to exceed ____% during the term of the loan OR
    ☐ at the prevailing rate of interest at the time of settlement.

This loan shall be amortized over a term of ___ years and shall require not more than a total of ___ discount and origination points. (If this Agreement provides for the assumption of a loan, the parties acknowledge that the balance set forth above is approximate and that the principal amount to be assumed will be the outstanding principal balance on the date of settlement, and Purchaser shall assume all obligations of Seller under such loan with the exception of past due charges for which the Seller shall be liable). Purchaser shall pay the balance of the Purchase Price at settlement, less any deposit, loan amount and/or other credits set forth in this Agreement.

☐ Seller agrees to pay at settlement (to be reflected on the settlement statement) the sum of $_____ towards Purchaser's closing costs, prepaids, discount points and loan expenses.

*This sale [select one]: ☐ is OR ☒ is not further subject to the Property's appraised value equaling or exceeding the Purchase Price, which value shall be determined by an appraiser selected by Purchaser's lender (if a cash purchase, the appraiser shall be selected by Purchaser and the appraisal shall be ordered within ten (10) days of the Date of

CVR 335                          Page 1 of 8                          rev 03/15

This form was produced by Jennifer Pardon. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.


Ratification). If the Purchase Price exceeds the appraised value, Purchaser shall either: (i) may proceed with consummation of this Agreement without regard to the amount of the appraised value, or (ii) make a written request to Seller within five (5) days of receipt of the appraisal for a reduction in the Purchase Price so long as the reduced Purchase Price is not lower than the appraised value, and provide Seller a copy of the appraisal (or lender verification of the appraised value). Seller shall then have five (5) days to respond to Purchaser's request for a reduction in the Purchase Price. If the parties are unable to agree upon a Purchase Price, then Purchaser may terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. For purposes of this paragraph, Purchaser is deemed to have received a copy of the appraisal when Purchaser is notified in writing of the appraised value of the Property. If Purchaser does not request a reduction in the Purchase Price within five (5) days after receipt of the appraisal, then this condition shall be deemed waived by Purchaser.

**5. FINANCING:** If this Agreement is conditioned upon Purchaser obtaining financing, Purchaser shall make written application for such loan within seven (7) days after the Date of Ratification (as defined in Paragraph 25) and shall make diligent effort to secure a written loan commitment no later than 5:00 p.m. on the settlement date set forth in Paragraph 7. If, at the time of such loan application, Purchaser chooses not to lock-in the rate and/or points that meet or exceed the requirements set forth in Paragraph 4, Purchaser waives such rate and point contingency. If this Agreement is not conditioned upon Purchaser obtaining financing, Purchaser shall provide Seller with written verification from a third-party in possession of Purchaser's assets within seven (7) days after the Date of Ratification that Purchaser has sufficient assets to pay the balance of the Purchase Price at settlement. If Purchaser fails to comply with any of the provisions of this paragraph or fails to obtain a written loan commitment by 5:00 p.m. on the settlement date, then Seller may terminate this Agreement by written notice to Purchaser, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. As used in this paragraph, "diligent effort" shall mean that Purchaser has provided all information or documentation requested by a lender within seven days of each such request and paid all costs associated with such loan application, including but not limited to, application fees, credit reports and appraisal(s). Purchaser authorizes the lender to disclose to Seller's real estate licensee information about the progress of the loan application and approval, including whether Purchaser has complied with the lender's requests and paid all costs associated with such application. If, after diligent effort, Purchaser is unable to obtain financing, then this Agreement shall terminate, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**\*6. DEPOSIT:** Purchaser shall make a deposit of $ __4,000.00__ to be held by __ReMax Today__ (the "Escrow Agent") in the form of: ☒ check ☐ cash ☐ other _____ (the "Deposit"). Purchaser [select one]: ☐ has paid the Deposit to the Escrow Agent OR ☒ will pay the Deposit to the Escrow Agent within __4__ days (the "Extended Deposit Date") after the Date of Ratification. If Purchaser fails to pay the Deposit as set forth herein, then Purchaser shall be in breach of this Agreement. In such event, at Seller's option and in lieu of all other remedies set forth in this Agreement, Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account by the end of the fifth business banking day following the latter of: (i) ratification and delivery of this Agreement as defined in Paragraph 25, or (ii) the Extended Deposit Date. If the Escrow Agent is not a VREB licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account in conformance with applicable Federal or Virginia law and regulations. The Deposit may be held in an interest bearing account and the parties waive any claim to interest resulting from such Deposit. The Deposit shall not be released by the Escrow Agent until (i) credited toward the purchase price at settlement; (ii) Seller and Purchaser agree in writing as to its disposition, (iii) a court of competent jurisdiction orders a disbursement of the funds, or (iv) disbursed in such manner as authorized by the terms of this Agreement and governed by Virginia law and/or regulations. Seller and Purchaser agree that Escrow Agent shall have no liability to any party for disbursing the Deposit in accordance with this paragraph, except in the event of Escrow Agent's negligence or willful misconduct.

**\*7. SETTLEMENT; POSSESSION:** Settlement shall be made at the offices of __Cawthorn, Deskavich & Gavin__ _____ on or before [select one box and insert closing date]:
☐ ____\*May____ __1st__, 20__15__, or a reasonable time thereafter if the Purchaser or Seller is making diligent effort to satisfy any contingencies contained in this Agreement. *Or as soon as possible. _M.M_ _CN_
OR
☐ _____, 20___, and subject to Seller's right to cure any title defects as set forth in Paragraph 22B, if settlement does not occur within ten (10) days following such date, a party who is ready, willing and able to close under the terms of this Agreement may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

This form was produced by Jennifer Pardon. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



AuthentIsign ID: 13709B3D-5750-4BD6-A922-AA825BE7FE15
AuthentIsign ID: 0B0D9A05B-A23E-4266-0971-6DC1X2D58232A

Possession of the Property shall be given at settlement, unless otherwise agreed in writing by the parties. Seller and Purchaser authorize and direct the settlement agent to provide a unified copy of the HUD-1 Settlement Statement for this transaction to the Seller, Purchaser, Listing Broker and Selling Broker. Failure to check one box above shall not invalidate this Agreement. The settlement date shall be as inserted above.

*8. **OCCUPANCY DISCLOSURE:** Purchaser intends to ☐ occupy ☒ not occupy the Property as a principal residence.

*9. **RESIDENTIAL PROPERTY DISCLOSURE:** Seller represents that the Property [select one]: ☒ is ☐ is not subject to the Virginia Residential Property Disclosure Act, Sections 55-517 et. seq. of the Code of Virginia, which requires the Seller of certain residential property to furnish the Purchaser with a Residential Property Disclosure Statement. Property Disclosure [select one] ☒ is ☐ is not attached. (Attachment does not become part of this Agreement.)

10. **FAIR HOUSING DISCLOSURE:** All offers shall be presented and considered without regard to race, color, religion, sex, handicap, familial status, elderliness or national origin as well as all classes protected by the laws of the United States, the Commonwealth of Virginia and applicable local jurisdiction.

*11. **PROPERTY OWNERS' ASSOCIATION DISCLOSURE:** The Seller represents that the Property [select one]: ☐ is ☒ is not located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55-509 et. seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires the Seller to obtain from the property owners' association an association disclosure packet and provide it to the Purchaser, or Purchaser's authorized agent. The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the association disclosure packet or is notified that the association disclosure packet is not available; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United Parcel Service, and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to the Purchaser by United States mail. The Purchaser may also cancel this Agreement at any time prior to settlement if the Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the Purchaser. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for delivery of the disclosure packet to Purchaser or Purchaser's authorized agent. The right to receive the association disclosure packet and to cancel this Agreement terminates at settlement. If the Purchaser has received the association disclosure packet, the Purchaser has a right, at Purchaser's sole expense, to request an update of such disclosure packet from the property owners' association in accordance with subsection G of Section 55-509.6 or subsection C of Section 55-509.7 as appropriate. A request for an updated disclosure packet does not extend the cancellation periods set forth above.

*12. **CONDOMINIUM DISCLOSURE:** The Seller represents that the Property [select one]: ☐ is ☒ is not a condominium resale, which is subject to the Virginia Condominium Act (Section 55-79.39 et seq. of the Code of Virginia) (the "Condominium Act"). If the Property is a condominium resale, the Condominium Act requires the Seller to obtain from the unit owners' association a resale certificate and provide it to the Purchaser or purchaser's authorized agent. The information contained in the resale certificate shall be current as of the specified date on the resale certificate. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the resale certificate; (b) within 3 days after receiving the resale certificate if the resale certificate is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United Parcel Service, and a receipt obtained; or (c) within 6 days after the postmark date if the resale certificate is sent to the Purchaser by United States mail. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the

CVR 335                                      Page 3 of 8                                      rev 03/15

This form was produced by Jennifer Pardon. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Instanet forms

Authentisign ID: 13708B3D-5750-4BD0-A922-AA825BE7FE15
Authentisign ID: 0F6DA0F0-0B0E-43B0-0D71-9DC21AB0202A

event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for the delivery of the resale certificate to Purchaser or Purchaser's authorized agent. The right to receive the resale certificate and to cancel this Agreement terminates at settlement. If the Purchaser has received the resale certificate, the Purchaser has a right, at Purchaser's sole expense, to request from the unit owners' association a resale certificate update or financial update in accordance with Section 55-79.97:1. A request for an updated resale certificate does not extend the cancellation periods set forth above.

**13. MECHANIC'S LIEN DISCLOSURE:** Virginia law (§43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, within 90 days from the last day of the month in which the lienor last performed work or furnished materials or 90 days from the time the construction, removal, repair or improvement is terminated. **AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.** Seller shall deliver to Purchaser at settlement an affidavit in a form acceptable to Purchaser's title company, signed by Seller, that no labor or materials have been furnished to the Property within the statutory period for the filing of mechanics'- or materialmens' liens against the Property. If labor or materials have been furnished to the Property during the statutory period, Seller shall deliver to Purchaser an affidavit signed by Seller and the person(s) furnishing the labor and/or materials that such items have been paid.

**\*14. PROPERTY INSPECTION [select one]:**  SOLD AS IS [MM] [caN]
☒ Purchaser waives a property inspection of the Property.
   OR
☐ Seller hereby grants to Purchaser the right to have the Property inspected by firm(s) selected by the Purchaser at Purchaser's expense and to request repair and/or repair credit of defects revealed. Inspections may include, but are not limited to, all structural and building components and systems, radon gas, underground storage tanks, soil condition, environmental testing and engineering studies. The term "defects" as used in this paragraph shall mean (i) a condition which impairs the normal stability, safety or use of any improvements (buildings) on the Property, or (ii) damage to any part of the improvements, but shall exclude any cosmetic flaws, antiquated systems or grandfathered components that are in working order but would not comply with current building code if constructed or installed today.

Purchaser shall provide Seller with an inspection report, cost of repairs and a written request for repair and/or repair credit of such defects NO LATER THAN: [select one]: ☐ _____ days after the Date of Ratification OR ☐ _____ (Time) on _____ (Date). If no box is checked, the parties agree that Purchaser shall provide Seller with an inspection report, cost of repairs and a written request for repair and/or repair credit for such defects no later than ten (10) days after the Date of Ratification. In its written request for repairs, Purchaser reserves the right to request that certain repairs be performed by a contractor currently licensed by the Virginia Board of Contractors. If Purchaser has not submitted the inspection report, cost of repairs and a written request for repairs and/or repair credit for such defects to Seller by said date, then Purchaser waives the right to request repairs and/or a repair credit, agrees that the present condition of the Property is satisfactory, and will proceed to Settlement in accordance with the Purchase Agreement. Seller shall respond in writing to Purchaser's repair request within seven (7) days of its receipt (the "Negotiation Period"). If Seller agrees in writing to accept such request, then the parties shall proceed to settlement. If Seller does not respond in writing within the Negotiation Period, then Seller shall be deemed to have rejected Purchaser's repair request.

At any time during the Negotiation Period, (i) Purchaser shall have the right to accept in writing Seller's currently offered repairs and repair credit and the parties shall proceed to settlement, and (ii) Seller shall have the right to agree in writing to make the repairs and pay the repair credit, if any, then requested by Purchaser and the parties shall proceed to settlement. Seller may not require Purchaser to accept a repair credit in lieu of repairs requested by Purchaser. Further, no party may unilaterally terminate this Agreement during the Negotiation Period, provided however, if, by 5:00 p.m. on the seventh (7th) day of the Negotiation Period, no final agreement is reached as to the repairs, Purchaser shall have until 5:00 p.m. on the second day after the end of the Negotiation Period to either: (i) terminate this Agreement by written notice to Seller, or (ii) accept in writing Seller's last offered repairs and/or repair credit and proceed to settlement. If Purchaser terminates this Agreement or fails to notify Seller of its election within the said two (2) day period, then this Agreement shall terminate, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

All repairs pursuant to Paragraph 14 shall be made in a workmanlike manner prior to settlement or such other time as agreed to by the parties. Unless otherwise agreed to by the parties, Seller shall provide Purchaser with paid receipts

This form was produced by Jennifer Pardon. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



Authentisign ID: 13708B3D-5750-4BD6-A922-AA825BE7FE15
Authentisign ID: 696BA05B-8B5E-4380-92A1-9DC282B82G2A

for all repairs prior to settlement or if repairs are to be paid from Seller's proceeds, Seller shall provide written invoices to Purchaser and the settlement agent directing disbursement of Seller's proceeds for payment of said invoices.

Seller shall have all utilities supplied to all systems prior to the inspection. If Seller fails to have all utilities supplied to all systems prior to Purchaser's inspection, then the expiration of the inspection period set forth above shall be extended until ten (10) days following the date that Purchaser is notified by Seller that all utilities have been supplied to all systems. Purchaser and Seller, their heirs, and assigns, hereby jointly and severally release and forever discharge the Listing and Selling Brokers and its real estate licensees in this transaction, from any and all liabilities, obligations, causes or action, claims and demands whatsoever arising out of or in any way connected with any or all work performed, materials furnished or inspections performed in connection with the captioned Property by contractors, suppliers or inspectors hired by them on behalf of the parties of this Agreement. Purchaser and Seller acknowledge that the provisions of this Paragraph 14 are in addition to treatments or repairs made pursuant to Paragraphs 22E, 22F and 22G.

**15. DEFAULT:** If either Seller or Purchaser defaults under this Agreement, the defaulting party, in addition to all other remedies available at law or in equity, shall be liable for the brokerage fees set forth in Paragraph 17 and any brokerage fees set forth in Seller's Listing Agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's Listing Agreement had been performed, and for any damages and all expenses incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's Listing Agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement, shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's Listing Agreement, or for any damages and expenses, including attorney's fees and court costs, incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction.

**16. Choice of Settlement Agent:** Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia provides that the purchaser or borrower has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's role in closing this transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, the lender for the purchaser will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

Variation by agreement: The provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia may not be varied by agreement, and rights conferred by this chapter may not be waived. The seller may not require the use of a particular settlement agent as a condition of the sale of the property.

Escrow, closing, and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, the purchaser or borrower is entitled to receive a copy of these guidelines from his settlement agent, upon request, in accordance with the provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia.

**\*17. BROKERAGE FEE:** Seller authorizes and directs the settlement agent to disburse to Listing Broker and Selling Broker from the settlement proceeds their respective brokerage fees payable as a result of the sale and settlement set forth under this Agreement. Prior to settlement, Listing Broker and/or Selling Broker shall deliver to the settlement agent a signed written statement setting forth the disbursement instructions for payment of any brokerage fees and any sales incentives payable to each broker.

**\*18. HOME WARRANTY INSURANCE:** Purchaser has been advised of the availability of a one year warranty program and ☒ declines coverage  OR  ☐ elects to purchase the home warranty program. The cost of the _____ home warranty program is $_____ and is to be paid by ☐ Purchaser OR ☐ Seller at settlement. The parties acknowledge that Listing and/or Selling Brokers and their respective licensees may receive a fee for each home warranty sold.

**19. RELATED BUSINESS AND SERVICES:** The Listing Broker and Selling Broker may engage in mortgage loan, homeowner's and title insurance, real estate settlement, home warranty and other real estate related businesses and



AuthentIsign ID: 13708B3D-5750-4BD6-A922-AA825BE7FE15
AuthentIsign ID: 8905A05B-A9DE-4368-9DA1-0DC2A0EB262A

services from which they receive compensation during the course of this transaction, in addition to the real estate brokerage fees.

**20. PURCHASER DISCLOSURE:** Purchaser warrants he/she does not own any real or personal property that must be sold and settled prior to the settlement of this Agreement, except as disclosed in this Agreement.

**†21. ADDITIONAL TERMS:**
Home Sold "as is, where is"

**22. STANDARD PROVISIONS:**

**A. EXPENSE PRORATIONS:** Seller agrees to pay the expense of preparing the deed and the applicable grantors tax, release fees, and any other fees applicable to the grantor by custom. Except as otherwise agreed herein, Purchaser shall pay all expenses incurred by Purchaser in connection with this Agreement, including without limitation, title examination fees, title insurance premiums, survey costs, recording costs and Purchaser's attorney's fees. All taxes, assessments, interest, rent escrow deposits and other ownership fees, if any, shall be prorated as of the date of settlement. In addition to the Purchase Price, Purchaser agrees to pay Seller for all fuel oil and propane/LP gas remaining in any tanks (if applicable) at the prevailing market price as of the date of settlement. **NOTICE REGARDING TITLE INSURANCE:** Purchaser may purchase either a "standard" or "enhanced" coverage title insurance policy. For purposes of the owner's policy premium rate disclosed by Purchaser's lender, if any, Seller and Purchaser require that the enhanced rate be quoted by Purchaser's lender. Purchaser understands that nothing herein obligates Purchaser to obtain an owner's title insurance policy or any specific title insurance coverage. The availability of enhanced coverage is subject to underwriting criteria of the title insurer.

**B. TITLE:** At settlement Seller shall convey the Property to Purchaser by a general warranty deed containing English covenants of title, free of all encumbrances, tenancies, and liens (for taxes or otherwise), but subject to such restrictive covenants and utility easements of record which do not materially and adversely affect the use of the Property for residential purposes or render the title unmarketable. If the Property does not abut a public road, title to the Property must include a recorded easement providing adequate access thereto. In the event this sale is subject to a financing contingency under Paragraph 4, the access to a public road must be acceptable to the lender. If the examination reveals a title defect that can be remedied by legal action or otherwise within a reasonable time, Seller, at his/her expense, shall promptly take such action as is necessary to cure such defect. If the defect is not cured within sixty (60) days after Seller receives notice of the defect, then either party may terminate this Agreement at the expiration of such sixty (60) day period by written notice to the other party. Upon termination of this Agreement, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. The parties agree that the settlement date prescribed in Paragraph 7 shall be extended if necessary to enable Seller to cure any title defect, but not for more than sixty (60) days, time being of the essence.

**C. LAND USE ASSESSMENT:** In the event the Property is taxed under land use assessment and this sale results in disqualification from land use eligibility, Seller shall pay any rollback taxes assessed. If the Property continues to be eligible for land use assessment, Purchaser agrees to make application at Purchaser's expense for continuation under land use, and to pay any rollback taxes resulting from failure to file or to qualify. Notwithstanding anything herein to the contrary, the provisions of this Paragraph C shall survive settlement and the delivery of the deed.

**D. RISK OF LOSS:** All risk of loss or damage to the Property by fire, windstorm, casualty or other cause is assumed by Seller until settlement. In the event of substantial loss or damage to the Property before settlement, Purchaser shall have the option of either (i) terminating this Agreement, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder, or (ii) affirming this Agreement, in which event Seller shall assign to Purchaser all of Seller's rights under any policies of insurance applicable to the Property.

**E. EQUIPMENT CONDITION AND INSPECTION:** Purchaser agrees to accept the Property at settlement in its physical condition at the time the Date of Ratification by all parties, except as otherwise provided herein. Seller warrants that all appliances, heating and cooling equipment, plumbing systems and electrical systems will be in working order at the time of Settlement or at Purchaser's occupancy, whichever occurs first. Seller agrees to deliver the Property in broom-clean condition and to exercise reasonable and ordinary care in the maintenance and upkeep of the Property between the date this Agreement is executed by Seller and Settlement or at Purchaser's occupancy, whichever occurs first. Seller grants to Purchaser or his representatives the right to make a pre-occupancy or pre-settlement inspection to verify that the condition of the Property conforms to this Agreement and to ensure that repairs, if any, have been completed.


This form was produced by Jennifer Pardon. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Instanet forms

Authentisign ID: 13708B3D-5750-4BD6-A922-AA825BE7FE15
Authentisign ID: B9BDA05B-AB0E-4280-8B71-50C2A0B9202A

**F. WELL AND SEPTIC:**
If the Property is served by a well and/or septic system, Seller agrees to furnish Purchaser with certificate dated not more than 30 days prior to settlement from the appropriate governmental authority or from a licensed and insured private company, indicating that the well water is free from contamination by coliform bacteria and that there is no evidence of malfunction of the septic system. If Purchaser obtains a VA loan, the well water shall also be tested by Seller and certified as being free from lead contamination. Inspection of the septic system shall include [check all applicable boxes]:
- ☐ visual inspection of drainfield surface with rod probing    ☐ pumping contents and visual inspection of all tanks
- ☐ other (describe): _____.
- ☐ inspection per manufacturer's guidelines of alternative septic system.

If well water contamination and/or septic system malfunctions are found, Seller shall repair all malfunctions and correct the well contamination at Seller's expense. Subject to the limitation set forth in Paragraph H below, if Seller fails to comply with any provision of this paragraph, then Purchaser may: (i) utilize the remedies set forth in Paragraph 15; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**G. WOOD INFESTATION:** Prior to settlement, Seller shall furnish Purchaser with an inspection report from a Virginia licensed termite control company concerning the presence of, or damage from, termites or other wood destroying insects. If the inspection reveals active infestation or damage caused by wood destroying insects, whether past or present, to the (i) primary dwelling, (ii) any other dwelling(s) on the Property with a valid certificate of occupancy, and (iii) the following additional structures _____, Seller shall have the affected area treated and have the damage repaired by a reputable company. The treatment company shall furnish a one-year warranty on such treatment. Subject to the limitation imposed by Paragraph H below, if Seller fails to comply with any provision of this paragraph, Purchaser may: (i) utilize the remedies set forth in Paragraph 15; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**\*H. LIMITATION:** If the total costs of fulfilling Seller's repair or treatment obligations set forth in Paragraphs F and G above exceeds $_____ ("Repair Limit"), then Seller shall have the option to: (i) fulfill Seller's obligations set forth herein; or (ii) pay or credit the Repair Limit to Purchaser and refuse to pay any excess of the Repair Limit. If Seller elects option (ii), Purchaser shall have the right to either accept the Property in its present condition (in which case the Seller shall pay or credit the Repair Limit to Purchaser at settlement), or to terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. If no Repair Limit is entered in this paragraph, the parties agree that the amount shall be $1,000.00. The Repair Limit is independent of any obligations agreed to by Seller pursuant to Paragraph 14 or any inspection/repair addendum.

**I. VA/FHA Loans:** It is expressly agreed that notwithstanding any other provisions of this Agreement, the Purchaser shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a director endorsement lender setting forth the appraised value of the Property of not less than the Purchase Price. The Purchaser shall have the privilege and option of proceeding with consummation of this Agreement without regard to the amount of the appraised value. The appraised value is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Purchaser should satisfy himself/herself that the price and condition of the Property are acceptable.

**J. NONBINDING MEDIATION:** Unless waived by mutual agreement of the parties, any disputes or claims arising out of this Agreement (except matters involving mechanics liens or licensing) shall be submitted to mediation prior to instituting arbitration or litigation. The cost of mediation will be shared equally between Purchaser and Seller. The mediation shall be non-binding, unless a satisfactory settlement has been reached. Thus, if no settlement is reached, the parties are not bound by the mediation and may pursue any course of action. If a settlement is reached, it shall be binding upon the parties. The mediation shall be provided by a mutually agreeable mediator. Judicial actions to provide provisional remedies, such as an injunction or a lis pendens, shall not be prohibited by the agreement to mediate, nor shall it waive a party's right to mediate.

**K. MISCELLANEOUS:** This Agreement represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties. This Agreement shall be construed according to the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties. To the extent any handwritten or typewritten terms herein conflict with, or are inconsistent with the pre-printed terms hereof, the handwritten or typewritten terms shall control. This Agreement may only be assigned by Purchaser with the written consent of the Seller. If the Seller agrees in writing to an assignment of this Agreement, Purchaser shall remain obligated hereunder until settlement. The parties agree that faxed or electronic transmission of any signed original document shall have the same effect as an original. As used in this Agreement, a "day" shall mean a calendar day unless otherwise noted. This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. No party will refuse delivery

CVR 335                                       Page 7 of 8                                       rev 03/15



Authentisign ID: 13708B3D-5750-4BD6-A922-AA825BE7FE15
Authentisign ID: 006B7AD63-DBDE-43C0-9571-0DC1A0B7E202A

of any notice from the other party in order to hinder or delay any deadline established in this Agreement. UNLESS OTHERWISE PROVIDED HEREIN, THE PROVISIONS OF THIS AGREEMENT AFFECTING TITLE SHALL BE DEEMED MERGED INTO THE DEED DELIVERED AT SETTLEMENT AND SHALL NOT SURVIVE SETTLEMENT.

**23. SELLER REPRESENTATION:** Seller warrants that the person(s) signing this Agreement as "Seller" include(s) every person who possesses an ownership interest in the Property or who will be a necessary party to convey clear title to the Property.

**\*24. ELECTRONIC SIGNATURES.** [M.M.] / [ca.n] If this paragraph is initialed by both parties, then in accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign, regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures as an additional method of signing and/or initialing this Agreement. The parties hereby agree that either party may sign electronically by utilizing an electronic signature service.

**\*25. ACCEPTANCE:** This Agreement becomes a legally binding agreement only upon **ratification and delivery**. Unless ratification and delivery of this Agreement occurs by ___10___ ☐ a.m. or ☒ p.m. on ___04/17/15___, this offer shall expire.

As used herein, "ratification and delivery" means delivery of a final accepted and signed Agreement to the other party or their respective broker or salesperson by hand delivery, fax or electronic transmission, or by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested. In the event of a dispute, the sender shall have the burden to demonstrate delivery to the recipient of the final accepted and signed Agreement. "Date of Ratification" means the date upon which ratification and delivery occurs. Purchaser and Seller understand that they shall have the right to withdraw any offer at any time prior to ratification and delivery. If either party withdraws an offer, notice shall be deemed effective upon receipt. If any offer is withdrawn, all deposits shall be returned to the Purchaser at no penalty.

WITNESS the following authorized signatures:

| Matthew Martin | | Cynthia A. Newcomb | 04/17/2015 |
|---|---|---|---|
| Purchaser  04/16/15 1:56:32 PM | Date | Seller  04/17/2015 5:37:38 PM  Executor of Estate  Hollis W Bickel | Date |
| Purchaser | Date | Seller | Date |
| Purchaser | Date | Seller | Date |



The following is for informational purposes only:

Selling Broker Company's Name and Address
___RE/MAX Today___
___4333 Cox Rd___
___Glen Allen___  VA  ___23060___
Office Phone  ___804-545-6400___
Office Fax  ___(804)545-6440___

Listing Company's Name and address
___Hometown Realty___
___5326 Twin Hickory Road___
___Glen Allen___  VA  ___23059___
Office Phone  ___804-747-9933___
Office Fax  ___(804)747-7393___

Purchaser's Salesperson's Information:
Name ___Jennifer Pardon___
Email ___jenniferpardon@yahoo.com___
Cell No. _____

Seller's Salesperson's Information:
Name ___Sean D Priest___
Email ___SeanP@HTRSI.com___
Cell No. _____

COPYRIGHT©2015 by the Central Virginia Regional MLS, LLC ("CVRMLS"). All rights reserved. This form may be used only by members in good standing of the CVRMLS. The reproduction of this form, in whole or in part, or the use of the names "Central Virginia Regional MLS" or "CVRMLS", in connection with any other form, is prohibited without prior written consent of CVRMLS.

This form was produced by Jennifer Pardon. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Instanet forms

 

**CENTRAL VIRGINIA REGIONAL MLS®**
*DISCLOSURE OF INFORMATION AND ACKNOWLEDGMENT*
*LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS*
*(Purchase)*

Property Address: 1505 Cutshaw Place     Henrico    VA   23226

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**
*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**
(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). _____

    (ii) __K__ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

    (i) _____ Seller has provided the purchaser with all available records and reports pertaining to lead based paint and/or lead-based paint hazards in the housing (list documents below). _____

    (ii) __K__ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**
(c) [MM] Purchaser has received copies of all information listed above.
(d) [MM] Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.
(e) Purchaser has (check (i) or (ii) below):

    (i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

    (ii) [MM] waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**
(f) ____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Seller: Nicholas W Bickel   Date: 4/16/2015   Executor Estate   Seller   Date
Purchaser: Matthew Martin   Date: 4/20/2015   Purchaser   Date: 4-16-15
Agent: Sean Priest   Date: 4/20/2015   Agent   Date

CVR 44B Rev 6/07

This form was produced by Sean Priest. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| | ) | Bankruptcy Case |
| JEFFREY E. CRUMPTON, | ) | No. 15-30021-KLP |
| | ) | |
| Debtor. | ) | |

**ORDER AUTHORIZING TRUSTEE SELL PROPERTY OF THE ESTATE**

Upon consideration of the Trustee's Motion to Sell Property of the Estate (the "Sale Motion") wherein the Trustee seeks this Court's authority to sell, pursuant to § 363(b) of the Bankruptcy Code, certain property (the "Property") of the estate as defined in the Motion, the Court finds as follows:

1. There are sound and appropriate business reasons for the Trustee to effectuate the transaction described in the Sale Motion.

2. The sale of the Property to Matthew Martin under the terms described in the Sale Motion is permitted under § 363(b) of the Bankruptcy Code.

3. The proposed sale is in the best interest of the estate.

4. Notice of the Sale Motion has been provided to the U.S. Trustee, the Debtor, and all creditors, such notice constituting proper and sufficient notice of the Sale Motion for the purposes of Fed. R. Bankr. P. 2002(a)(2) and 6007(a).

Accordingly, it is hereby ORDERED as follows:

1.      The Trustee is authorized to sell the Property to Matthew Martin for consideration in accordance with the terms and conditions set forth in the Sale Motion.

2.      Any Objection not properly filed and served by a party within the applicable objection deadlines are and shall be forever waived by the party and barred from assertion against the Trustee or Debtor.

3.      This Order shall take effect upon entry, and shall not be automatically stayed pursuant to Fed. R. Bankr. P. 6004(h).

ENTERED:

United States Bankruptcy Judge

I ASK FOR THIS:

Bruce H. Matson (Va. Bar No. 22874)
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23218
(804) 783-2003

Chapter 7 Trustee

5

## **LOCAL RULE 9022-1 CERTIFICATION**

Pursuant to LBR 9022-1, I hereby certify that a true copy of the foregoing Order was endorsed by or served upon all necessary parties.

_____

SERVICE LIST

Bruce W. White
8550 Mayland Drive, Suite 206
Richmond, VA 23294

John G. Chaplin, Jr.
Chaplin & Qureshi, PLC
4900 Dominion Boulevard, Suite A-1
Glen Allen, VA 23060

Bruce H. Matson
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23218

16239600.1